## SMITH, APPELLANT, v. DENNIFF, RESPONDENT.

[No. 1,118.]

[Submitted January 16, 1900. Decided March 12, 1900.]

*Water Rights—Appropriation—Easement — Appurtenance to Land — Burden of Proof — Mortgage — Abandonment—Right to Possession.*

1. Where one rightfully in possession of nonriparian land under a contract with the owner appropriates water from the public domain, and conducts it by means of a ditch on the public domain to, and continuously uses it on, such land, he acquires title to the water right and ditch; and it does not become appurtenant to the land in the absence of a conveyance from the appropriator to the owner of the land,—but will pass under a mortgage by the appropriator of the land and water right.

2. Under the laws of Montana an appurtenance to land must be an easement. ·

3. A water right when once appropriated includes and comprehends an easement.'

4. A water right, legally acquired, is in the nature of an easement in gross, which according to circumstances may or may not be an easement annexed or attached to certain land as an appurtenance thereto.

5. The legal title to the land upon which a water right lawfully acquired by appropriation on the public domain is used, or intended to be used, in no wise affects the appropriator's title to the water right.

6. Where one holds land by defective or inchoate title, and a servitude upon or an easement in it by a valid title, the servitude or easement is not extinguished by unity of possession.

7. An easement can become legally attached to a parcel of land as appurtenant thereto only by unity of title in the same person to both the dominant estate and the easement claimed. ` ·

8. The record on appeal in water right cases should contain a diagram of the situation of the ditches over which the litigation has arisen.

9. One who asserts that a water right and ditch are appurtenant to certain lands has the burden of proving it, and, if he claims title thereto, he must connect himself with the title of the prior appropriator.

10. Section 1078 of the Civil Code cannot be construed to deprive one having merely a possessory right in land, who appropriates a water right from the public domain for use on such land, of his title to such water right and make it appurtenant to the land, the title whereof is in another, since such interpretation would be violative of Section 1882 of the Civil Code.

11. Where one who has appropriated water from the public domain for use on land, of which he is in possession under a contract with the owners thereof, mortgages his water rights, he will not be deemed to have abandoned such rights, so as to defeat the mortgagee's title.

12. Where one having a right to the possession of land appropriates water from the public domain for use on such land, and subsequently mortgages such right, the fact that the mortgagee has not used the water will not defeat an action by him against the owner of the land, or one in privity with him, to obtain possession of and use of such water right, since until foreclosure the mortgagee would have no right to possession.

### ON REHEARING.

Former opinion (23 Montana, 65) reversed, and judgment below reversed.

**MR. JUSTICE PIGOTT** delivered the opinion of the Court.

After the opinion heretofore rendered in this case (23 Mont. 65, 57 Pac. 557), the court of its own motion granted a rehearing. Additional briefs and oral arguments have been filed and made, and we are satisfied upon further consideration that the conclusion announced in the former opinion is erroneous.

The ultimate question presented for decision is whether a certain water right is appurtenant to a certain parcel of land. As preliminary to the determination of this question, it is necessary to investigate the nature of a "water right," how title to the same may be acquired, the character of its ownership, and its relation to other real property.

1. A water right may be defined to be the legal right to use water. The right to the use of running water is a corporeal right or hereditament which follows or is embraced by the ownership of riparian soil. It is a corporeal right running with riparian land. (*Hill* v. *Newman*, 5 Cal. 445; *Cary* v. *Daniels*, 8 Metc. (Mass.) 480.) A water right can therefore be acquired only by the grant, express or implied, of the owner of the land and water. The right acquired by appropriation and user of the water on the public domain is founded in grant from the United States government as owner of the land and water; such grant has been made by congress. (*Wood* v. *Etiwanda Water Co.*, 122 Cal. 152, 54 Pac. 726; *Welch* v. *Garrett*, (Idaho) 51 Pac. 405.) This grant by the government applies, however, only to the public domain owned by the United States. (Note to *Heath* v. *Williams*, 43 Am. Dec. 280, 25 Me. 209); therefore, where the absolute title to riparian soil on a stream has passed from the United States before any right to the water by prior appropriation has become vested in any person, no such right can be acquired afterwards under the grant of congress; and the common-law rule as to the rights of riparian owners would apply, were it not for the fact that the state of Montana has by necessary implication assumed to itself the ownership, *sub modo*,

of the rivers and streams of this state, and, by section 1880 *et seq* of the Civil Code, has expressly granted the right to appropriate the waters of such streams, which right if properly exercised in compliance with the requirements of the statutes, vests in the appropriator full legal title to the use of such waters by virtue of the grant made by this state as owner of the water. But this privilege or right to appropriate the water of a stream can in any and every case be taken advantage of or exercised only by one who has riparian rights, either as owner of the riparian land, or through grant of the riparian owner. A trespasser on riparian land cannot lawfully exercise there any right to such water or acquire any right therein by virtue of section 1880 *et seq.* of the Civil Code. (*Alta Land Co.* v. *Hancock*, 85 Cal. 219, 24 Pac. 645.) One may not acquire a water right on the land of another without acquiring an easement in such land. (*St. Helena Water Co.* v. *Forbes*, 62 Cal. 182); and an easement is an interest in land that cannot be created, granted or transferred except by operation of law, by an instrument in writing or by prescription. (Section 1500 of the Civil Code; *Great Falls Waterworks Co.* v. *Great Northern Ry. Co.*, 21 Mont. 487, 54 Pac. 963.) Nothing here said is to be understood as a modification of the doctrine of *McDonald* v. *Lannen*, 19 Mont. 78, 47 Pac. 648, or of *Wood* v. *Lowney*, 20 Mont. 273, 50 Pac. 794. The right to appropriate water on the land of another for a public use may be obtained through condemnation proceedings under the right of eminent domain. (*St. Helena Water Co.* v. *Forbes, supra.*) In California it cannot be so obtained for a private use. (*Lorenz* v. *Jacob*, 63 Cal. 73.) Under Section 15, Article III, of the Constitution of Montana, the use of appropriated water is made a public use. (*Ellinghouse* v. *Taylor*, 19 Mont. 462, 48 Pac. 757.) By section 1880 *et seq.* of the Civil Code the right is conferred upon any one to make a valid appropriation of water on the unsold state lands. (*Wood* v. *Etiwanda Water Co., supra.*) But such permission can and does apply only to lands owned by the state. As owner of the stream, it has granted the

right to appropriate the water of the stream, yet it does not pretend to legalize the exercise of such privilege, in violation of the vested rights of other landowners, as well might it be said that by reason of the game laws, permitting all persons to fish in the streams of this state, it therefore follows that anyone has a vested right to exercise this privilege wherever there is a stream, in defiance of the vested rights of the property owners,—that is to say, by reason of the game laws a landowner has no rights which a fisherman is bound to respect.   The mere statement of such a proposition is a demonstration of its fallacy.   It is therefore apparent that absolute legal title to a water right can only be acquired by grant, express or implied, of the riparian owner of the land and water.

It may be remarked, *obiter*, that the common-law doctrine of riparian rights assured to each riparian owner the right to the reasonable use, without substantial dimunition in quantity or deterioration in quality to the detriment of other riparian proprietors, of the water of a stream flowing by or over his land.   The doctrine of "prior appropriation" confers upon a riparian owner, or one having title to a water right by grant from him, the right to a use of the water of a stream which would be unreasonable at the common law, and to this extent the doctrine of prior appropriation may be said to have abrogated the common-law rule.

2.   Section 1078 of the Civil Code defines an "appurtenance" as follows:   "A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way, or water course, or of a passage for light, air or heat from or across the land of another."   A "water course from or across the land of another" is an easement, and by reference to section 1250 of the Civil Code it is plain that in the contemplation of the Code an appurtenance to land is in any and every case an easement. For example:   A. owns a parcel of land, to irrigate which he has lawfully appropriated, and by right is using, water.   The ditch through which the water is conveyed is also owned by

him, and is partly upon his land and partly upon the land of B. The water right is an appurtenant to A.'s land, and that part of the ditch which is upon B.'s land is an easement of A. therein, and is also appurtenant to the land of A., but that part of the ditch which is upon A.'s land is not appurtenant thereto, but is part and parcel of the land itself.

A legal appropriator of water may change the place of its use, and may use the water for other purposes than that for which it was originally appropriated. (Section 1882 of the Civil Code; *Woolman* v. *Garringer*, 1 Mont. 544; *Wimer* v. *Simmons*, 27 Or. 1, 39 Pac. 6; *Fuller* v. *Swan River P. Mining Co.*, 12 Colo. 12, 19 Pac. 836.) The right thus acquired to take water from or over the land of another is therefore in the nature of an easement in gross (Civil Code, Section 1251, Subdivision 6; *Bank* v. *Miller*, 7 Sawy. 168, 6 Fed. 545; *De-Witt* v. *Harvey*, 4 Gray, 488; *Goodrich* v. *Burbank*, 12 Allen 462), which, according to circumstances, may or may not be an easement annexed or attached to certain land as an appurtenant thereto.

For the purpose of illustrating the practical application of the foregoing principles, we shall consider a few cases of common occurrence:

(a) A. has absolute title in fee to riparian land. Under the statutes of Montana he is clothed with the right, by compliance with the provisions of the statute, to appropriate a water right, subject, of course, to the vested rights of prior appropriators. Now, being the owner of riparian land, he can, as has been shown, legally exercise this privilege on his own land; and, when he has perfected such inchoate right by fulfilling the requirements of the statute, the legal title to such water right becomes vested in him,—not, however, by reason of any common-law riparian rights as owner of the soil, but by reason of statutory grant. Title to the land and title to the water right are in A.'s case two distinct things, each derived from a separate source. The question now presents itself: Is the water right thus acquired by A. an appurtenance to the land of A. upon which it is used? We have already

attempted to show that an appurtenance to land under the laws
of Montana must be an easement.    In this case A. owns the
land bordering on the stream as well as under it; his water
right and ditch are on his own land, and as a servitude or
easement thereon cannot be held by the owner of the servient
tenement (Section 1254 of the Civil Code), and, as a servitude
is extinguished or merged by the vesting of the right to the
servitude and the right to the servient tenement in the same
person (Section 1260 of the Civil Code), it might seem as if
it were impossible that A.'s water right and ditch could be an
appurtenance to A.'s land.    So far as A's ditch on his own
land and the water right in it are concerned, it is self-apparent
that they cannot be easements, and they are therefore not ap-
purtenant to the land,—they are part and parcel of the land.
The right to the use of the running water (that is, the right
to appropriate water on one's own land) is a corporeal here-
ditament; but the water when once appropriated includes and
comprehends an incorporeal hereditament, to wit: the right
to have the water flow in the stream, without diminution or
deterioration, to the head of the ditch or place of diversion,—
an easement in the stream, and a servitude upon upper ripar-
ian lands.    (Subdivision 11, Sec. 1250, of the Civil Code;
*Lower King's River Water Ditch Co.* v. *King's River & Fresno
Canal Co.*, 60 Cal. 408; *Cary* v. *Daniels, supra*; *Wyatt* v.
*Irrigation Co.*, 18 Colo. 298, 315, 33 Pac. 144.) The water
right of A., therefore, being confessedly by right used with
his land, could be an appurtenance thereto, and upon a con-
veyance in writing of the land by A., no reservation being
made in the deed, such water right, being attached to the land,
would pass as an appurtenance thereto if at the time of the
conveyance of the land A. had title to both land and water
right.

(b)  B. owns nonriparian land.   He cannot, therefore, take
up a water right on his own land.   He has, however, by
statutory grant, the privilege of appropriating water upon the
public domain or upon land owned by the state; if, however,
there is no such land of which he can avail himself for the

purpose of appropriating a water right, then, of necessity, he must acquire by grant, express or implied (or by condemnation under the power of eminent domain), from some riparian owner the right to exercise the statutory privilege,—that is to say, he must acquire an easement in or a servitude upon the land of another, for, without an easement in or a servitude upon the property of another, B cannot possibly lawfully acquire a water right (*St. Helena Water Co.* v. *Forbes, supra*); and such can be acquired only by an instrument in writing.   In the case of B. certain distinctions must be kept in mind; the right to an easement in the stream is derived from statutory grant, the means of acquiring this right he must obtain from a riparian owner; the latter embraces two things:   (1) The right to divert the water on the land of the grantor; and (2) the right to conduct the water across the land of the grantor.   A grant of the first right would doubtless carry with it the right to convey the water across the grantor's land; that is, a right of way for the water over the land.   It would be an easement of necessity.   On the other hand, a mere grant by a riparian owner of a right of way for conducting water over the land of the grantor would not convey to the grantee the right to appropriate or divert water on the land of the grantor. (*Zimmler* v. *San Luis Water Co.*, 57 Cal. 221.)   If, however, B. does properly obtain the right to appropriate on, and conduct water across the land of another, or if he does so over the public domain or state lands, and thereby makes a valid appropriation of a water right, and uses the same on his nonriparian land, in either case such water right and ditch is an easement in or servitude upon the land of another, and is therefore an appurtenance to his nonriparian land, title to the easement and title to the dominant estate being both united in B.; and upon a conveyance of his land the water right and the ditch would pass as appurtenances thereto, provided no reservation thereof is made in the deed.

(c)   C. has possessory right to government riparian land. In this case C., of course, has the privilege, by statutory grant, of appropriating a water right for the land which he

occupies, and, when appropriated in compliance with the requirements of the law, the legal title to such water right becomes vested in him. It is a positive, certain, and vested property right, for the legal title to the land upon which a water right lawfully acquired by appropriation on the public domain is used, or intended to be used, in no wise affects the appropriator's title to the water right. (*Santa Paula Waterworks* v. *Peralta*, 113 Cal. 38, 45 Pac. 168.) The water right thus acquired by C. is, as we have already shown, an easement in the stream, and, until he acquires title, a burden upon the land which he occupies but does not own, the title to which double easement (or to the easement and servitude) becomes vested in him by virtue of the grant of the government. The servitude upon the land under such circumstances does not become merged or extinguished by reason of his being in possession of the land, for where one holds land by defective or inchoate title, and a servitude upon or an easement in it by a valid title, the servitude or easement is not extinguished by unity of possession (*Tyler* v. *Hammond*, 11 Pick. 193); nor can it be technically an appurtenance to the land upon which it exists, for, as we have seen, a burden or servitude, to be appurtenant to the land, must be a burden or servitude upon other land. Under these circumstances, if C. obtains title to the land from the United States, his servitude upon or easement in the land is immediately extinguished (Section 1260 of the Civil Code), and becomes part and parcel of the land; but before he acquires title to the land his servitude thereon or easement therein is a vested interest in the public domain, and can only be transferred by an instrument in writing. Now, as to his water right, viewed only as an easement in the stream: This, as we have seen, is an incorporeal hereditament,—an easement not attached to land, and therefore akin to an easememt in gross at the common law, title to which is vested in C. But an easement, to be appurtenant to a parcel of land, must be attached to the dominant estate. (*Swazey* v. *Brooks*, 34 Vt. 451; *Spaulding* v. *Abbot*, 55 N. H. 423; *Crooker* v. *Benton*, 93 Cal. 366, 28 Pac. 953;

*Green* v. *Collins*, 20 Hun. 474, 86 N. Y. 246; *Ward* v. *Far-well*, 6 Colo. 66.) It can become legally attached only by unity of title in the same person to both the dominant estate and the easement claimed. (*Meek* v. *Breckenridge*, 29 Ohio St. 642.) C.'s water right, therefore, cannot become an appurtenance to the land of which he is possessed until he obtains title thereto from the government, or transfers his title to his water right to the owner of the land, and such transfer can be made by an instrument in writing only.

(d) D. has possessory right to government nonriparian land. If D. lawfully acquires a water right upon the public domain, and conducts water by a ditch over the public domain to the land which he occupies, and uses the same thereon, it is clear, from the results reached in the foregoing discussion, that such water right and ditch will not become an appurtenance to the land occupied by D. until he obtains title thereto from the government, or conveys his water right and ditch to the owner of the land.

With the foregoing established legal principles kept in mind, let us proceed to the consideration of the case at bar. At the very outset of the investigation of the record in this case the language of the Court in *Wood* v. *Lowney*, 20 Mont. at page 275, and 50 Pac. at page 794, is most apt: "Our labors in the case before us would have been somewhat simplified, and, indeed, would be generally simplified in water right cases, by having incorporated into the record a diagram of the situation of the ditches over which the litigation has arisen."

The record does not clearly disclose, but upon the oral argument counsel conceded, that Cosins appropriated the water from the public domain, and that he was then in possession of a certain parcel of nonriparian land under a contract with its owner; what the contract was does not appear; he was, however, admittedly in rightful possession of the nonriparian land, the title to which was in another. His water right was legally acquired by an appropriation thereof on the public domain; he conducted the water, by means of a ditch over the public

domain, to the land he was occupying, and used the water thereon. It is conceded that he made a valid appropriation of the water, and, as we have endeavored to show, the legal title to the land upon which a water right acquired by appropriation made on the public domain is used or intended to be used in no wise affects the appropriator's title to the water right, for the *bona fide* intention which is required of an appropriator to apply the water to some useful purpose may comprehend a use upon lands and possessions other than those of the appropriator, or a use for purposes other than those for which the right was originally appropriated. (Section 1882 of the Civil Code; *Nevada Ditch Co.* v. *Bennett*, 30 Or. 59, 45 Pac. 472.) Title to the water right and ditch therefore vested in Cosins, and this precludes the possibility of their passing to the Northern Pacific Railway Company, the owner of the land, as appurtenances to the land, without a conveyance in writing. One who asserts that a water right and ditch are appurtenant to certain lands has the burden of proving that they are appurtenances, and must connect himself with the title of the prior appropriator. The water right of Cosins was property distinct from his estate in the land of the railway company upon which he was using the water, and his design, successfully executed, was to mortgage the water right, even if he should fail to acquire title to the land included in the mortgage, and upon which the water was then being used.

In the case at bar the defendant does not assert or pretend that there ever was any conveyance by Cosins of his water right to the Northern Pacific Railway Company, the owner of the land; and, since an easement can only become legally attached to land by unity of title in the same person to both the dominant tenement and the easement claimed, it is apparent that the Northern Pacific Railway Company could not grant or convey the water right to the defendant as an appurtenance to its land, for the reason that it has never owned the same, and therefore the right and ditch have never been legally attached as appurtenant to the land now occupied by the defend-

ant. (*Bliss* v. *Kennedy*, 43 Ill. 67; *Manning* v *Smith*, 6 Conn. 289.) The water right, not being owned by the railway company, did not constitute a part of its estate. Section 1078, *supra*, may not be interpreted to mean that a water right acquired by prior appropriation by one who has only possessory title to the land, although with the intent at the time to use the water upon such land, shall, by the mere act of using it as intended, become inseparably attached as an appurtenance, and the appropriator thereby lose his water right. Such an interpretation would not only violate recognized custom and legal principles, but would render inoperative the provisions of Section 1882 of the Civil Code.

The common-law rule that an easement acquired by a tenant as an appurtenance to the land inures to the benefit of the landlord upon the expiry of the tenancy (*Dempsey* v. *Kipp*, 61 N. Y. 462) is, for the reasons we have stated, inapplicable to cases arising under the statutes in respect of prior appropriation of water rights; but, even if it were held to apply in a qualified sense, it could at the most affect only the ditch as an easement, and it would by no means follow that the water right of Cosins has become an appurtenance to land in section 17. (*Philbrick* v. *Ewing*, 97 Mass. 133.) The water right is in no sense so incident or attached to the land in section 17 upon which it was used as to be incapable of use apart from that land.

The contention that Cosins abandoned his water right by executing a mortgage thereof cannot be successfully urged in this case. (*Middle Creek Ditch Co.* v. *Henry*, 15 Mont. 558, 39 Pac. 1054.) Some argument is advanced that neither the plaintiff nor his assignor, the mortgagee, was actually using the water; but this fact is immaterial; it, of itself, does not impair plaintiff's present right to the possession and use of the water. Plaintiff or his assignor never was entitled to possession until after foreclosure and sale; the right to the possession was meanwhile vested in Cosins. The defendant's possession prior to the sheriff's deed will not be presumed to be wrongful,—indeed he asserts rightful possession—and he

will be presumed to be the licensee or tenant of Cosins in the water right, and, when his licensor's or landlord's right to possession ceased, his own fell with it.

The judgment is reversed, and the cause remanded

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY, being disqualified, took no part in this decision.